In the Matter of BESSIE SIEGEL et al., Constituting the Board of Education of Union Free School District No. 1 of the Towns of Chester, Goshen and Blooming Grove, and Said Persons Individually and as Taxpayers of Said District, Appellants, v. JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Respondent.— AULISI, J. Appeal from an order of the Supreme Court, Albany County, which dismissed the petition in a proceeding under CPLR (art. 78) to review the Commissioner of Education's refusal to certify nonimpedance so that State aid for construction of a music room would be available. The petitioners bring this application as individuals, taxpayers and members of the Board of Education of Union Free School District No. 1 of the Towns of Chester, Goshen and Blooming Grove, in Orange County. This school district, hereinafter called the " Chester District ", was included in 1950 in the Master Plan for school district reorganization, which plan contains the recommendation that it be annexed to the nearby Goshen Central School District. The Chester District teaches grades kindergarten through 12th with a total enrollment of 403 and is one of the few remaining union free districts. The Commissioner of Education on May 15, 1963, at the request of the two districts involved, made an order annexing

the territory of Chester to Goshen. The voters of each district then petitioned for a vote (see Education Law, § 1802, subd. [2]). The voters of the Chester District twice defeated annexation and the Goshen voters registered their disapproval by a margin of nearly 6 to 1. The Chester District meanwhile decided to convert a portion of the unused basement area of its school building into a modern and adequate music room. After meeting Education Department requirements, the room was constructed at a cost of $13,800. The Chester District then applied for a certificate of nonimpedance and for an apportionment of State building aid for the construction of the new music room. This approval was withheld on the theory that any aid for capital improvements would impede reorganization. Section 3602 of the Education Law provides for apportionment of public moneys to school districts employing eight or more teachers and subdivision 6 provides for such apportionment for capital expenditures for building construction. The Legislature included in this grant of aid paragraph a of subdivision 10 which states: "10. Limitations on the apportionment. The apportionment to any school district during any school year shall be subject to the following provisions: a. District subject to reorganization. No apportionments pursuant to subdivision six of this section shall be paid to any school district which is scheduled for reorganization pursuant to a feasible plan of reorganization, unless the commissioner shall certify that an apportionment pursuant to subdivision six will not impede such reorganization, and the failure or refusal of the commissioner to make any such certification shall be subject to review, pursuant to the provisions of article seventy-eight of the civil practice act". It is upon this section that the Commissioner bases his refusal to apportion aid. Petitioners claim that the Commissioner has misconstrued the statute in question in that he has taken the position that he must refuse to certify nonimpedance solely because of voter refusal to accept reorganization. It is their position that aid should be forthcoming when the improvement could be utilized after consolidation. We do not believe that this was the test the Legislature intended. The question is, however, not whether the addition would be usable upon reorganization, but rather if reorganization will be impeded by encouraging with State funds additions and improvements to existing facilities scheduled to become part of a reorganized district. There is a long legislative history directed toward the consolidation and reorganization of the educational system in this State. A Master Plan for school district reorganization was proposed by a joint legislative committee and adopted by the Legislature in 1947. After further studies by various committees a new Master Plan was established in 1958. In furtherance of this stated policy of reorganization certain economic incentives were made available to central school districts. In an apparent effort to further speed reorganization State building aid, recently made available to other districts, can be withheld from recalcitrant districts under the above provision. This "sand-bag" technique is being used here to force resisting voters to accept and foster reorganization. The Legislature has made its policy clear. If building aid to a district would impede reorganization, regardless of its other consequences, then the aid is to be denied. The decision as to whether or not such aid would be an impediment to reorganization has been left to the Commissioner. This is the usual delegation of authority to an administrator, who in this case has much more extensive power in deciding the composition of these consolidated districts (see *Board of Educ.* v. *Allen,* 6 A D 2d 316, affd. 6 N Y 2d 871, app. dsmd. 361 U. S. 535). Although the Commissioner even characterizes himself as the hangman and executioner under this provision, the petitioners have failed to show he abused his discretion. While centralization may appear to be of dubious value to some, especially when

one of the reasons given in its support contends that larger schools provide more substitutes for the various athletic teams so that each team member will not overly exert himself, the Legislature and the Commissioner are firmly committed to a program of reorganization. This policy is overwhelmingly supported by distinguished authors and educators and by numerous committees and studies. That they are attempting to force a speed-up in this area is a natural consequence of the commitments already made and the general over-all policy. The fact that the voters have rejected annexation may render consolidation impossible at the present time, but it does not render it unfeasible. The feasibility of the Chester District being joined with another has been recommended and approved by the committees establishing such reorganization plans and by the Commissioner's staff in attempting to implement such reorganization. It has only been recently that union free school districts have been eligible for building aid and the fact that it is conditioned on the Commissioner's authorization does not indicate any unconstitutional discrimination. The record here does not support the contention that the determination was arbitrary or capricious in light of the authority vested in the Commissioner by the Legislature (*Matter of Board of Educ. of Union Free School Dist. No. 1* v. *Wilson*, 303 N. Y. 107). Order affirmed, without costs. Gibson, P. J., Herlihy, Reynolds and Taylor, JJ., concur.